# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>PETER WOJTKUN<br><br>　　　　Debtor<br><br>―――――――――――――――<br><br>JOSEPH G. BUTLER, TRUSTEE,<br><br>　　　　Plaintiff<br><br>v.<br><br>PETER WOJTKUN<br><br>　　　　Defendant | Chapter 7<br>Case No. 13-12719-MSH<br><br><br><br><br><br>Adversary Proceeding<br>No. 17-1037 |

## MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Joseph Butler, the chapter 7 trustee of the bankruptcy estate of Peter Wojtkun and the plaintiff in this adversary proceeding, filed a two-count complaint against Dr. Wojtkun seeking injunctive relief under both Bankruptcy Code § 105(a) (count I) and § 521(a)(3) (count II) barring Dr. Wojtkun from interfering with Mr. Butler's efforts to sell the assets of Dr. Wojtkun's former dental practice, requiring Dr. Wojtkun to cooperate with those efforts and prohibiting Dr. Wojtkun from practicing dentistry for five years within a 15 mile radius of Dr. Wojtkun's dental office.[1]  Before me is Dr. Wojtkun's motion for summary judgment on both counts of the

---

[1] All references to the Bankruptcy Code or Code are to 11 U.S.C. § 101 *et seq.*

complaint pursuant to Fed. R. Civ. P. 56, made applicable to this proceeding by Fed. R. Bankr. P 7056.

## Background

The material facts are not in dispute. On May 7, 2013, Dr. Wojtkun filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in this court. On August 13, 2013, Dr. Wojtkun received his bankruptcy discharge.

Dr. Wojtkun is a dentist licensed to practice in Massachusetts. On the date of his bankruptcy filing, he was, and had been since 1994, the president, treasurer, sole director and sole shareholder of Peter Wojtkun D.M.D., P.C. (the "PC"). The PC conducted its dental practice at 351 North Main Street in Andover, Massachusetts. Between 2011 and 2014, the PC generated approximately $1 million in gross revenue annually.

Dr. Wojtkun practiced dentistry as an employee of the PC until November 2014 at which time the PC ceased operating. Since November 2014, Dr. Wojtkun has been self-employed as a dentist at the same location in Andover previously occupied by the PC. He rents office space and equipment from Premier Dental Concepts of Andover, Inc. This corporation, which is wholly-owned by Dr. Wojtkun's wife, rented the same office space and equipment to the PC prior to its shutting down.[2]

---

[2] Premier Dental Concepts of Andover, Inc. acquired the office lease and equipment in 2010. Prior to that time the lease and equipment had been assets of the PC.

2

When Dr. Wojtkun initiated his chapter 7 case his 100% shareholder interest in the PC became an asset of his bankruptcy estate. Mr. Butler as trustee succeeded to Dr. Wojtkun's ownership interest in the shares.

Mr. Butler's ability to dispose of the PC shares or to exercise his ownership rights in the PC to liquidate it and sell its assets, including its patient list, were subject to state laws regulating the operation and liquidation of professional corporations, including those owning dental practices. *See* Mass. Gen. Laws ch. 156A, §§ 2 and 10. Mr. Butler's efforts to navigate the labyrinth of state requirements and prerequisites took time and were complicated by Dr. Wojtkun's implacable opposition. For example, when Mr. Butler sought court authority to vote the PC shares to appoint himself as general manager in order to liquidate the PC's assets, Dr. Wojtkun objected. When I granted Mr. Butler's request, Dr. Wojtkun appealed to the United States district court, which ultimately affirmed my order.

Eventually Mr. Butler successfully surmounted all the legal hurdles standing in the way of a sale of the assets of the PC. He faced one final obstacle, however. Not surprisingly that obstacle was Dr. Wojtkun. Mr. Butler and his business broker, who specializes in the sale of dental practices, believe that Dr. Wojtkun was not doing enough to assist them in assembling data and records regarding the PC so they could intelligently place a value on the PC and so prospective purchasers could perform reasonable due diligence with respect to it. Most importantly, Dr. Wojtkun continued to practice dentistry in the former location of the PC, which Mr. Butler believed significantly depressed the value of the PC's dental practice assets. Mr. Butler's complaint is intended to address these concerns.

The Dispute

Mr. Butler relies upon Bankruptcy Code §§105(a)[3] and 521(a)(3)[4] as the source of the bankruptcy court's authority to issue an injunction aimed at preserving the value of estate assets and facilitating a trustee's sale of those assets. He argues that under § 521(a)(3) a debtor is obligated to cooperate with a trustee's sale and that cooperation includes not only providing information but also not interfering with the sale by, for example, operating in competition with a prospective purchaser. Mr. Butler maintains that a debtor is subject to an implied covenant not to compete with the purchaser of assets sold by a bankruptcy trustee.

Dr. Wotjkun retorts that Mr. Bulter's complaint fails even to allege a claim. Dr. Wojtkun asserts that a request for an injunction is not a cause of action upon which to base a complaint.

---

[3] Bankruptcy Code §105(a) provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

[4] Bankruptcy Code § 521(a)(3) provides that a debtor shall:

> if a trustee is serving in the case or an auditor is serving under section 586(f) of title 28, cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title[.]

4

Arguing that Bankruptcy Code §105(a) does not create substantive rights and that §521 does not create a private right of action, he urges me to grant him summary judgment. Dr. Wojtkun also denies that he has failed to cooperate with Mr. Butler and, most importantly, he argues that a bankruptcy court may not impose a non-competition injunction upon a chapter 7 debtor.

The Summary Judgment Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56, made applicable by Fed. R. Bankr. P. 7056. A genuine issue is "one supported by such evidence that 'a reasonable jury, drawing favorable inferences,' could resolve [the issue] in favor of the nonmoving party." *In re McCarthy,* 473 B.R. 485, 491 (Bankr. D. Mass. 2012) (quoting *Triangle Trading Co. v. Robroy Indus., Inc.,* 200 F.3d 1, 2 (1st Cir. 1999)). A material fact is one that might affect the outcome of the case under the governing law. *See id.* at 491.

The moving party in a summary judgment motion bears the initial burden of demonstrating that no genuine issue of material fact exists by pointing to materials of evidentiary quality such as affidavits or depositions that are so one-sided as to warrant judgment as a matter of law. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 252 (1986); *In re Varrasso,* 37 F.3d 760, 763 (1st Cir. 1994). "Only if the record, viewed in that manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Co. v. Hayes,* 116 F.3d 957,

5

959 (1st Cir. 1997). Here, the material facts are not in dispute but rather the parties disagree on the law that governs the legal consequences flowing from those facts.

Discussion

Mr. Butler's complaint seeks an order in the form of an injunction barring Dr. Wojtkun from "hindering or interfering with" Mr. Butler's sale of the PC dental practice assets, requiring Dr. Wojtkun to cooperate with Mr. Butler in that sale and imposing "a reasonable restriction on Dr. Wojtkun's competing with any purchaser of the dental practice."

The basis for Mr.Butler's demand is Bankruptcy Code § 521, which sets forth a debtor's duties in a bankruptcy case and specifically § 521(a)(3), which requires a debtor to "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties." Mr. Butler invokes Code § 105(a) because it confers on the court the power to issue orders to carry out the provisions (such as § 521) of the Code.

Dr. Wojtkun decries the procedure used by Mr. Butler to try to implement § 521, namely the filing of a complaint seeking injunctive relief as its sole remedy. He correctly notes that a request for injunctive relief is not a cause of action upon which a complaint may be based. *Payton v. Wells Fargo Bank, N.A.*, No. CIV.A. 12-11540-DJC, 2013 WL 782601, at *6 (D. Mass. Feb. 28, 2013); *Patriot Group, LLC v. Fustolo (In re Fustolo)*, Adv. Pro, No. 15-1015, 2015 WL 1399045, at *14 (Bankr. D. Mass. Mar. 24, 2015). He is correct as well that neither § 521(a) nor § 105(a) creates a free-standing cause of action

6

available to a trustee to be vindicated in a complaint. In *Miller v. Mathis (In re Mathis)*, 548 B.R. 465, 472 (Bankr. E.D. Mich. 2016), the court held:

> [T]here is no evidence of any congressional intent, either in the language of § 521 itself or in the legislative history, that supports a finding that a Chapter 7 trustee has an implied, private right of action against a debtor who breaches their [sic] statutory duties under § 521. Nor does § 105 permit the Court to find a private, implied cause of action in favor of a trustee against a debtor for breach of § 521.

*See also Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 444–45 (1st Cir. 2000), *amended on denial of reh'g* (Dec. 15, 2000) (finding that section "105 does not itself create a private right of action, but a court may invoke § 105(a) if the equitable remedy utilized is demonstrably necessary to preserve a right elsewhere provided in the Code") (internal citations and quotation marks omitted); *In re SPM Mfg. Corp.*, 984 F.2d 1305, 1311 (1st Cir. 1993) ("Nor does section 105(a) authorize courts to create substantive rights that are otherwise unavailable under the Code, or to expand the contractual obligations of parties.") (citing cases).

None of this, however, means that Mr. Butler is without recourse to seek to compel cooperation from a recalcitrant debtor. True, Mr. Butler used a chain saw when a pair of pruning shears would have been adequate, but his choice of tool should not deprive him of a remedy. There can be no question that a trustee may seek an order compelling a debtor to comply with his duties under § 521.

> By rejecting the Trustee's argument that there is an implied cause of action for damages against a debtor who breaches their [sic] duties under § 521 to cooperate with the Trustee, to file information and to surrender property, the Court does not mean to suggest that a debtor may take those duties lightly. The provisions of that section are mandatory, not optional. And the

7

> Trustee is correct that a trustee should not have to pull teeth to get a debtor to file required information and surrender property that is required to be surrendered. But if a debtor fails to perform those duties in an honest and diligent fashion, trustees and creditors are not without remedy. The Court earlier in this opinion noted several remedies that exist. Where the facts so warrant, the Court has no hesitation in granting motions to compel a debtor to perform their duties upon a showing that they have failed to do so, to award sanctions and find contempt where a debtor disobeys an order, or to dismiss a case or deny discharge

*In re Mathis*, 548 B.R. at 472–73. A simple motion to compel Dr. Wojtkun's compliance with his statutory duties would have been sufficient.

In certain situations where parties have sought relief by motion when the Bankruptcy Rules required the filing of a complaint in an adversary proceeding, courts, in the interests of justice and judicial economy and where there was no prejudice to the parties, have chosen to dispose of the motion on the merits despite the procedural anomaly. *See In re Stacy*, 99 B.R. 142 (D. Mass. 1989). The converse should also hold true. I will not exalt form over substance where Mr. Butler seeks relief by way of a complaint when a motion would do.

> Moreover, the "Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957), *abrogated in part by Twombly*, 550 U.S. at 563, 127 S. Ct. 1955; *Harris v. Garner*, 216 F.3d 970, 996 (11th Cir. 2000) (same). *See also* 6-107 Collier Bankruptcy Practice Guide P. 107.03 ("[Rule] 8(e) provides that 'pleadings must be construed so as to do justice.' This rule is at the very heart of the rules regarding pleadings. 'Pleadings are intended to serve as a means of arriving at fair and just settlements of controversies between litigants. They should not raise barriers which prevent the achievement of that end.'") (quoting *Maty v. Grasselli Chem. Co.*, 303 U.S. 197, 200, 58 S. Ct. 507, 82 L. Ed. 745 (1938)); *De Loach v. Crowley's Inc.*, 128 F.2d 378, 380 (5th Cir. 1942) ("Just what [Rule 8(e) ] means is not clear, but it excludes requiring technical exactness, or the making of refined inferences against the pleader, and requires an effort fairly to understand what he attempts to set forth.").

*Beem v. Ferguson*, 713 F. App'x 974, 979 (11th Cir. 2018) (footnotes omitted).

I turn, therefore, to the question at the heart of this dispute. How far can a bankruptcy court go in requiring a debtor's cooperation under § 521(a)(3)?

The Bankruptcy Code imposes certain duties on a debtor, including § 521(a)(3)'s requirement that a debtor cooperate with the trustee appointed in his case. "The term 'cooperate' is a broad one and has been held to mean 'that whenever the trustee calls upon the debtor for assistance in performance of his duties, the debtor is required to respond, at least if the request is not unreasonable.'" *Houghton v. Morey (In re Morey)*, 416 B.R. 364, 366 (Bankr. D. Mass. 2009) (quoting *In re Stinson,* 221 B.R. 726, 731 (Bankr. E.D. Mich. 1998) (citing 4 *Collier on Bankruptcy* ¶ 521.11[5], at 521–43 (Lawrence P. King ed., 15th ed. 1996)). Other subsections of § 521 expand upon the duty of cooperation. Section 521(a)(4) mandates that a debtor "surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate. . ." Such obligations of the debtor further a trustee's administration of a chapter 7 case, including the trustee's duty to "collect and reduce to money the property of the estate. . ." 11 U.S.C. § 704(a)1). But that does not mean that a chapter 7 debtor and his trustee will always work hand in hand. Indeed each serves a different set of interests. "The chapter 7 debtor, . . . while under a duty to cooperate with the chapter 7 trustee, acts primarily for his own benefit. In a chapter 7 case, there is always a trustee who, like a chapter 11 debtor in possession and

9

unlike a chapter 7 debtor, serves for the benefit of the creditors." *In re Waldvogel*, 125 B.R. 13, 15 (Bankr. E.D. Wis. 1991).

In his complaint Mr. Butler asks me to require Dr. Wojtkun to cooperate with him in the sale of the PC's dental practice assets. He does not elaborate on what cooperation he seeks. In the context of such a sale, however, it is reasonable to require Dr. Wojtkun to provide Mr. Butler with whatever PC business and (subject to applicable confidentiality requirements) patient records are available to him. Recall that Mr. Butler now owns all the stock of the PC. It is also reasonable to require Dr. Wojtkun to answer relevant questions Mr. Butler may pose concerning the PC in order to provide prospective purchasers with necessary information.

Mr. Bulter also asks me to bar Dr. Wojtkun from "hindering or interfering with" his sale. I take this to be a request that Dr. Wojtkun be prohibited from actively soliciting patients of the PC. Since the PC's patients are its most valuable asset, I find this a reasonable request. In so concluding, I do not means to suggest that Dr. Wojtkun must refuse to treat patients who on their own seek him out. A duty to cooperate or in this case not to interfere cannot be unlimited in scope and, as discussed below, must yield at some point to the compelling policy that encourages a debtor's fresh start after bankruptcy.[5]

---

[5] I also note that Dr. Wojtkun has been practicing dentistry for more than five years since the filing of his bankruptcy petition without any restriction on his ability to recruit or treat patients.

Case 17-01037    Doc 69    Filed 08/23/18    Entered 08/23/18 14:13:35    Desc Main
Document    Page 11 of 16

Mr. Butler's final and most audacious request is that I impose on Dr. Wojtkun restrictions on his competing with any purchaser of the dental practice assets. Any ambiguity in this request is elucidated in the proposed form of injunction attached to Mr. Butler's complaint, which prohibits Dr. Wojtkun from competing with any purchaser of the PC's dental practice assets within a 15 mile radius of the Andover office for five years.

As previously noted, the most valuable asset in a sale of a dental practice is its patient list. The more confidence a purchaser can have that she will be able to successfully transition patients, the more that purchaser should be willing to pay to acquire the practice. That is why in the typical arms-length sale, the seller will be required to enter into a non-competition agreement with the purchaser and often to actively assist in the transitioning process.

Bankruptcy sales are, of course, anything but typical. They are by definition distressed sales, often subject to intense time pressures and limited availability of data, and usually without warranties as to the assets being sold. When the debtor happens to be the operator of a skilled service business, be it as a carpenter or a neurosurgeon, and continues to engage in practice post-bankruptcy, a significant complicating factor is added to a trustee's efforts to sell the business.

All honest debtors are entitled to a fresh start. This precept is enshrined in the Bankruptcy Code as one of its foundational principles. One manifestation of this principle is § 541(a)(6), which excludes from property of the bankruptcy estate a debtor's

post-bankruptcy earnings and "leaves the bankrupt debtor free after that to accumulate new wealth so that he might make a fresh start following bankruptcy." *In re Glazer*, 317 B.R. 488, 489 (Bankr. E.D. Mich. 2004). At the same time, the Code requires trustees to do their utmost to deliver to creditors a recovery on their claims. *In re All Island Truck Leasing Corp.*, 546 B.R. 522, 523 (Bankr. E.D.N.Y. 2016). Whether to prohibit a debtor from engaging in his skilled profession because to do otherwise would degrade or destroy the value of an asset which a bankruptcy trustee intends to sell, is a conundrum that places these two policies in head-to-head conflict.

In addition to maintaining that his request for a five year, 15 mile non-compete is nothing more than the practical expression of Code § 521(a)(3)'s duty to cooperate, Mr. Butler also points out that as to sellers of a business, Massachusetts law recognizes, and courts will impose, an implied covenant not to compete with the purchaser. *Tobin v. Cody*, 343 Mass. 716, 720 (1962) (seller subject to implied covenant not to compete).

The concept of an implied covenant not to compete makes good sense in the context of a voluntary sale where the seller typically receives the value of the transferred assets and ought not to be permitted to take that value and then begin undermining it by competing. That is why the cases that impose an implied covenant involve voluntary sales. In the context of an involuntary bankruptcy sale by a chapter 7 trustee, which virtually never results in value to the debtor, the logic of an implied covenant no to compete vanishes.

Mr. Butler relies on the decision of the Seventh Circuit Court of Appeals in *Fairbanks v. Dudenhoffer (In re Uniserivces, Inc.)*, 517 F.2d 492 (7th Cir. 1975), a bankruptcy case in which the court of appeals upheld a bankruptcy court's declaration that Dudenhoffer, a former officer and director and current substantial shareholder of the debtor, could be prohibited from competing with the debtor for a period of time within a geographical area.

It is true that *Uniservices* involved a bankruptcy trustee's attempt to impose a covenant not to compete on a debtor's principal. But *Uniservices* is distinguishable from the case before me in two crucial ways. First, *Uniservices* was a reorganization case where the non-compete order was entered in aid of reorganization. In other words, Dudenhoffer retained skin in the game because as a significant shareholder he stood to benefit from a reorganization. This case involves a chapter 7 trustee's sale steadfastly opposed by the shareholder of the entity being sold. Second, the Seventh Circuit noted that there were unique facts in its case (not present here) that supported the imposition of a non-compete:

> Because of his standing in the hierarchy of the corporation, Dudenhoffer was able to and did demand covenants not to compete from employees, which covenants continued for one year after termination of their employment. He refused, when requested, to make such commitment himself. We know of no reason in equity why Dudenhoffer should escape the restriction he imposed on others merely because of his superior corporate position or because of the admittedly justifiable termination of his employment. The extent of the implied covenant imposed by the district court is coincident in scope of time and geographical area with covenants imposed by Dudenhoffer on other employees.

*Id.* at 497.

13

A far closer case on its facts is *In re Glazer*, *supra*, which involved the chapter 7 bankruptcy of a chiropractor. The trustee sought to sell the chiropractor's practice as a going concern and proposed that the court's order authorizing the sale include a mandatory covenant not to compete by the debtor for a two year period covering three counties in Michigan. The bankruptcy court denied the trustee's request to impose the covenant not to compete, concluding that the Code's fresh start policies trumped the competing goal of maximizing creditor recoveries.

> Although not stated this way in the trustee's motion, what the trustee seeks to bring into the estate and sell is the debtor's right to work in Wayne, Oakland and Macomb counties. However, as noted, the debtor's post-petition earnings are excluded from property of the estate. The Court concludes that this broad exclusion necessarily includes the debtor's right to work in certain counties post-petition. Moreover, the fact that this might increase the value of the property that is estate property—here, the debtor's chiropractic practice—does not change this result.

Glazer, 317 B.R. at 490.

The court in *Glazer* was not asked to consider the debtor's obligation under § 521(a)(3) to cooperate with the trustee. In *Glazier* the court weighed the debtor's fresh start against the creditors' right to a recovery and found that the scale tipped decidedly in favor of a fresh start. But add the debtor's duty to cooperate to the trustee's weighing pan and the scale tips back just enough to convince me that Mr. Butler is entitled to some relief. As the Seventh Circuit observed in *Uniservices*, "[e]ach party's duties and rights must be tempered with consideration of the other's . . . ." *Id.* at 496.

Conclusion

In an effort to temper Dr. Wojtkun's duties with Mr. Butler's rights, I will take the following action. I will treat this matter as a request by Mr. Butler for an order compelling Dr. Wojtkun to comply with his duties under Bankruptcy Code § 521(a)(3) and issue an order requiring him to do so.[6] That order will include a prohibition against Dr. Wojtkun's soliciting patients of the PC. It will not, however, prohibit him from practicing dentistry in competition with a purchaser of the PC's assets or treating former PC patients who voluntarily seek him out. Having concluded that this matter should be treated as a request to compel cooperation under § 521(a)(3) and having granted relief on that request, I will then grant Dr. Wojtkun summary judgment on all remaining claims in the complaint, resulting in the final disposition of this adversary proceeding.

Separate orders consistent with this memorandum shall enter.

At Boston, Massachusetts this 23rd day of August, 2018.

By the Court,

*[signature: Melvin S. Hoffman]*

Melvin S. Hoffman
U.S. Bankruptcy Judge

---

[6] Even if I did not treat the complaint as if it were a motion to compel Dr. Wojtkun's cooperation in the sale of assets of the estate, Fed. R. Civ. P. 56(f), made applicable by Fed. R. Bankr. P. 7056 permits me to enter judgment for Mr. Butler.

|  |  |
|---|---|
| Counsel Appearing: | James M. Liston, Esq.<br>Hackett, Feinberg P.C.<br>Boston, MA<br>    For the Plaintiff, Joseph G. Butler, Trustee<br><br>Thomas H. Curran, Esq.<br>Curran Antonelli, LLP<br>Boston, MA<br>    For the Defendant, Dr. Peter Wojtkun |